CRUZ ET AL., PLAINTIFFS AND APPELLANTS, *v.* FRAU, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2701.—Decided July 27, 1922.

DAMAGES—NEGLIGENCE—AUTOMOBILES.—On the evidence which is transcribed in the opinion it was *held:* That the negligence of the defendant in driving the automobile which caused the death of plaintiff's deceased is manifest.

ID.—ID.—ID.—THIRD PERSONS.—The general rule is that in an action for damages for negligence there is no defense when the negligence of third persons or an unavoidable accident or the presence of an inanimate object is alleged as having contributed to the plaintiff's injury, if the negligence of the defendant was the proximate cause without which the accident would not have occurred.

ID.—ID.—ID.—CONCURRENT NEGLIGENCE.—When an injury is done as a result of the concurrent negligence of two persons and it would not have been inflicted in the absence of the negligence of either of them, the negligence of both is the proximate cause of the accident and both are liable. Under such circumstances it is reasonable to make each of them liable for the whole injury, as it would not have been inflicted in the absence of the negligence of either of them.

The facts are stated in the opinion.

*Mr. C. Brunet* for the appellants.

*Mr. F. Parra Capó* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

In the month of January, 1921, the defendant was driving his automobile along the road between the port of Ponce and the city of Ponce. Another automobile was going in the same direction and they collided. As a result of the collision the defendant lost control of the steering gear and his car collided with a horse-cart driven by Ramón Méndez Rivera who, as a result of the impact, received a blow on the head which caused his death.

Josefa Cruz, the widow of Méndez Rivera, in representation of her minor children Clotilde, Isabel, Carmen María and Juan Méndez y Cruz, born during her wedlock with Ramón Méndez Rivera, brought the present action and alleged the following in the complaint: That Josefa Cruz, the lawful wife of Ramón Méndez Rivera, had borne four children who were minors under the *patria potestas* of the mother and all depended for their subsistence upon the personal labor of Ramón Méndez, who was a strong and healthy man of 45 years of age and earned for his family two dollars a day; that in the latter part of January, 1921, Ramón Méndez was driving a horse with which he was working on the road between Ponce and the port on a side space off the roadbed; that at that moment Manuel Frau was coming from the port towards Ponce, driving his automobile at a great rate of speed, racing with another automobile and refusing to allow it to pass, and due to this refusal to allow the other automobile to pass, the two collided on the trolley track, which at that place was on the left of the defendant, who lost control of the steering gear and, therefore, his automobile crossed the road without any control and struck Ramón Méndez Rivera who was on the right side of the road with reference to the defendant's general

direction and off the roadbed, whereby Méndez received blows that caused his death.

The defendant answered the. complaint and alleged that Ramón Méndez was not a robust man and did not earn an average of two dollars a day; that when the defendant struck Ramón Méndez Rivera he was not driving his auto- mobile above the normal and reasonable rate of speed per- mitted by law; that he was not racing with another auto- mobile and did not refuse to let it pass, for the other auto- mobile did not sound the horn or give any other signal; that he was not driving his automobile along the left side of the road near the trolley track; that notwithstanding the diligence with which the defendant was driving his auto-- mobile, he could not prevent the other car, which was coming behind at a great rate of speed without sounding the horn or giving any signal and attempting to pass the defendant, from striking the left side of the defendant's car and caus- ing the defendant to lose control of the steering gear, thereby throwing his car towards the right side of the road where it struck the cart of Ramón Méndez and injured him to such an extent that he died two days later.

The trial court dismissed the complaint and from that judgment the present appeal was taken praying for its reversal.

The appellant assigns several errors as committed by the trial court, but in view of the conclusion which we have reached in this case regarding the result of the evidence, it will be necessary to examine only the error relative to the weighing of the evidence by the lower court.

Although the record contains the opinion of the trial court, it gives no statement of the facts nor any legal reason- ings, but only says: "As a result of the evidence the court holds that the material allegations of the complaint have not been proved." It is to be presumed, therefore, that the lower court found that the evidence was contradictory

and adjusted this conflict in favor of the defendant. Hence, it is necessary to examine all of the evidence in order to ascertain whether the court erred as assigned by the appellant.

One fact which we may consider as established is that the death of Ramón Méndez was the result of the impact or collision of two automobiles which were going in the same direction from the port to the city of Ponce, and that as a consequence of the collision the defendant's automobile swerved towards the right side of the road and struck the cart of Ramón Méndez, who received the blow that caused his death. The defendant admits this fact in his answer, but alleges that notwithstanding the care with which he was driving his automobile, he could not prevent the other car, which he could not identify and which was coming behind at a great rate of speed without sounding the horn, from striking the left side of his car and causing the accident.

It is a general rule that reasoning from the effect will lead to the cause. Notwithstanding the excessive velocity of the unknown automobile, its collision with the defendant's car does not seem to have been violent, because the defendant's car was not damaged seriously or in such a way as to prevent its running; and such was also the case with the other car, which continued on its course. If the speed of the latter was excessive the collision with the defendant's car should have been violent and should have done considerable damage to both cars as a result of the law of inertia. How is it possible to explain that there was no damage which prevented the progress of the unidentified automobile and that the defendant's car was thrown towards the right and crossed the road in the direction of the deceased's cart without other damage to the defendant's car than merely the denting of the horn above the left wheel by the effect of the collision with the other automobile and the breaking of a headlight and a mud-guard on the right side when it struck the

cart of Ramón Méndez? The evidence of both parties an-
swers this question. In fact, it does not appear that there was
a violent collision between the two automobiles. If this had
been the case it would be reasonable to suppose that the
damage to one of the cars must have been very serious.
Undoubtedly the accident occurred because of the attempt
of the unknown automobile to pass the defendant's car
when they were engaged in an unlawful race. See subdi-
vision "d" of section 13 of the Automobiles Act of July
1, 1916.

The fact that the defendant's automobile skidded and
left the marks of its front wheels on the tarred surface of
the road for a considerable distance shows clearly that the
effect of the collision which caused the death of Ramón Mén-
dez resulted rather from the excessive speed at which the
defendant was driving than from the violence of the impact
of the two automobiles.

The testimony of José Torres, who saw the accident, is
very important and among other things, he said: "I heard
the response of Frau's car when he operated the brake in
order to turn the car, but it was coming so rapidly that
even with the brake on it skidded across the road and struck
the man, who was in a stooping position." This witness
also testified that he saw the defendant's car skid; that he
saw the mark of the wheel from the side of the trolley track to
the other side of the road; that he saw the measuring of
the distance of the skidding and the mark measured fourteen
meters from the place where the automobile started to where
it struck Ramón Méndez. In connection with this testimony
the defendant himself testified that he saw the marks of his
tires on the road and that about one hour later photographs
were taken of the place of the occurrence; that the marks were
of the skidding of his car and the starting point of them
was near the side of the trolley track which was on the left
of the defendant. This important detail of the marks in-

delibly made on the road must be·given most careful consideration. This was a fact easily proved. The road between the port and the city of Ponce is tarred, and at the time of the accident and a little later the marks could be seen plainly. The fact that the road is tarred appears from the record.

. All of the details of the accident are connected in such a manner that each one of itself is of material interest, and they allow us to reconstruct the facts as they occurred. An essential point which must influence the decision of the case is the situation of the trolley track. It was proved that that track was on the left side of the road from the defendant's position. If the starting point of the marks of the wheels was near the trolley track, that would indicate that the defendant was not driving to his right. These marks are strong physical or circumstantial evidence whereby it may be seen that the facts speak for themselves and the presumption or inference arises that the defendant was driving without exercising due diligence.

Another essential and important point is that the automobile which could not be identified overtook the defendant's car and signaled with the horn for permission to pass. This detail was made evident from the very evidence of the defendant. Witness Becerra for the defendant said: "Frau and I were coming from the factory and upon arriving in front of the Ramerí house we heard the horn of an automobile which was approaching. * * * " Witnesses José Torres and Celso Ortiz for the plaintiff corroborated that statement. The former testified as follows: " * * * while going by Stop 13 I heard the sound of a horn and then looked back for a long stretch of road and saw at Stop 14 two automobiles coming at such speed that I took care to get nearer to the side of the road and stand at observation, because I saw that they were racing. While I was standing there the car that came behind sounding its horn overtook the other and had to take the inside of the road because the other would

not let it pass. * * * " Ortiz testified that: "The two automobiles came racing and the one coming behind was sounding its horn. * * * "

An attempt has been made to explain by the defendant's evidence (testimony of Becerra and the defendant) that he tried to let the other automobile pass, but that the circumstances were such at that moment as to prevent it. The defendant tells us that at the time of the occurrence there was some movement or traffic on the road; however, there appears to have been no more traffic at the time than that of the two automobiles which collided, for although the defendant testified that there were also two or three cars and a truck, these vehicles were standing still somewhat beyond the place of the occurrence. The road was broad and the trolley car which was coming on the defendant's left and passed after the accident could not prevent the defendant from taking the right side and letting the other automobile pass. Everything shows clearly that if the facts surrounding the case do not explain satisfactorily why the defendant was prevented from driving on the right side of the road, it follows that he did not exercise the due diligence that an ordinarily prudent and cautious man would have exercised under the same circumstances.

Speeding is generally the origin of serious accidents, and that is the reason why the speed is regulated by all pertinent statutes and a violation of the law is of itself considered negligence. Driving as much to the right as possible by every driver or chauffeur is another precaution provided for by law, and its violation generally implies negligence. The racing of motor vehicles on a public road is another violation of the Automobiles Act and the violators of this provision are guilty of negligence and liable for the damage that they may cause other persons. (Section 13, *supra.*) We are fully convinced that the conditions under which the facts occurred made the defendant in this case liable for neg-

ligence for all or some of the violations to which we have referred.

It is no defense to undertake, as the defendant does, to put all of the responsibility for the death of Ramón Méndez upon the unknown chauffeur who was driving the car that came up behind, alleging also that the said chauffeur, without giving any signal to the defendant who did not know that he was coming behind, attempted to pass in such a careless manner as to be the cause of the death of Ramón Méndez. Whatever participation the unknown chauffeur may have had in the accident, the facts and circumstances of the case have shown that the defendant contributed as an efficient cause to the accident, because he did not take the precautions required by law as to speed, driving to the right or giving way to the car that came behind. There is no doubt that if the defendant had observed these precautions required by the Automobiles Act, the collision with the other automobile would not have happened, and much less the death of Ramón Méndez as a relation of cause and effect.

"The general doctrine is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons, or an inevitable accident, or an inanimate thing, contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred." 22 R. C. L. 128.

Applying the same rule to this case, it is also no defense that the defendant lost control of the steering gear by reason of the collision, for this was merely one of the effects where the lack of diligence on the part of the defendant necessarily originated the consequences which, not because fatal, are less imputable to his negligence than was the original and proximate cause of the injury. In other words, the loss of control of the steering gear was an effect of the collision

and the collision was a result of the negligence of the de fendant.

It appears highly surprising to us that in an accident like this, which occurred in plain daylight, it was impossible to identify the automobile which collided with the defendant's automobile, or the chauffeur who was driving it. The law requires that every automobile must carry in front and at the back, in visible places, placards with the number of the license in order to make its identification easy. The defendant bases his case essentially on placing upon the other automobile all of the responsibility for the occurrence, but perhaps it would have been to the interest of the defendant to have obtained the identification of the other automobile which has remained unknown. However, the most favorable conclusion at which we might arrive is that the defendant should share the liability with the other automobile and that both were the proximate cause of the accident.

"When an injury occurs through the concurrent negligence of two persons, and would not have happened in the absence of either, the negligence of both is the proximate cause of the accident, and both are answerable. Under such circumstances it is reasonable to hold each liable for the entire loss, because the same would not have occurred if the negligence of either were absent." 22 R. C. L. 129, 130.

As regards the damages suffered by the plaintiffs and the evidence produced to establish them, we believe that the sum of $5,000 is sufficient.

The judgment of the court below is reversed and substituted by another sustaining the complaint and adjudging that the defendant pay to the plaintiffs the sum of $5,000 and their costs.

*Reversed and substituted.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.